Filed 10/29/15  In re J.H. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | B263807 |
| | (Los Angeles County Super. Ct. No. CK95805) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>         Plaintiff and Respondent,<br><br>    v.<br><br>A.H.,<br><br>         Defendant and Appellant. | |

Appeal from an order of the Superior Court of Los Angeles County.  Stephen Marpet, Juvenile Court Referee.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

A.H. (mother) appeals from the March 24, 2015 orders of the juvenile court denying her petition pursuant to Welfare and Institutions Code section 388[1] and terminating parental rights. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother's 11-month-old daughter J.H. came to the attention of the Los Angeles County Department of Children and Family Services (Department) in September 2012. Mother had a history of substance abuse, including methamphetamine use since the age of 11. Mother was also allegedly the victim of physical and sexual abuse by her live-in boyfriend. The Department filed a petition pursuant to section 300, subdivision (b) alleging mother's history of substance abuse and failure to protect and care for J.H. J.H. was detained with maternal grandmother.

Before the jurisdiction and disposition hearing in March 2013, the Department reported it had been unable to obtain ASFA[2] approval for maternal grandmother's home. Maternal grandmother's current spouse had a September 2007 conviction for spousal battery and driving under the influence from a prior marriage, and had apparently not completed a domestic violence program or substance abuse program. At the hearing, the juvenile court sustained the petition, and over the Department's objection, ordered that J.H. remain placed in maternal grandmother's home (maternal stepgrandfather was ordered to not live in the home). The court ordered the Department to continue to investigate and work with maternal grandmother to get "AFSA cleared," and to consider other possible family relatives as caregivers. The court also ordered reunification services for mother and monitored visitation.

---

[1] All further undesignated section references are to the Welfare and Institutions Code.

[2] ASFA is the acronym for Adoption and Safe Families Act of 1997, which establishes the federal guidelines for foster care and relative care placements. (*In re Darlene T.* (2008) 163 Cal.App.4th 929, 932, fn. 1.)

Placement was thereafter attempted in the home of a maternal great-uncle and his wife, as well as a family friend, but both caregivers determined they could not permanently provide a home for J.H. and requested the Department to find an alternative. Maternal grandmother continued to express interest in adopting J.H.  The Department noted that the County denied a criminal waiver request for maternal stepgrandfather in May 2014.

On May 27, 2014, the court terminated mother's reunification services, finding only partial compliance despite the Department having provided mother with 18 months of services.  Mother apparently argued against termination of her services at the hearing, but she concedes in her opening brief that she did not challenge the juvenile court's May 27, 2014 order.

The Department located a nonfamily member for J.H.'s placement and the caregiver expressed an interest in adoption.  The prospective adoptive parents' home was approved by the Department.  The permanency planning hearing was continued to allow the Department to again discuss with maternal grandmother any options she may have to be approved for adoption.

On March 24, 2015, mother filed a petition pursuant to section 388, requesting that the court "stay the adoption proceedings and extend her time to demonstrate to the court that she is now fit to care for her child."  Mother requested that the court consider returning J.H. to her care and custody.  The petition sought no other relief.

At the hearing, the juvenile court denied mother's section 388 petition, finding no "change of circumstance" and that the requested change would not be in the best interest of J.H.  The court proceeded with the section 366.26 hearing.  Mother's only contention at the section 366.26 hearing was that once J.H. was moved from the home of the family friend and placed with the nonfamily prospective adoptive parents, the juvenile court was statutorily required to reconsider maternal grandmother as a preferred relative caregiver under section 361.3.  Mother made no other argument.  Specifically, mother made no argument there was any applicable exception to the termination of parental rights, such as the existence of a beneficial parent-child relationship.  (§ 366.26, subd. (c)(1)(B)(1).)

Counsel for J.H. advised the court she was waiving any reconsideration of the statutory relative placement preference, because "maternal grandmother had been thoroughly investigated. There were other risk factors that could not gain AFSA approval." The current non-family caregiver was willing to adopt. And, it was in J.H.'s "best interest to be in this placement." The court found by clear and convincing evidence that J.H. was adoptable and terminated parental rights. At mother's request, the court ordered the Department to arrange a final visit for mother.

This appeal followed.

## DISCUSSION

It is not disputed that an order denying a section 388 petition or an order terminating parental rights is appealable. But, "[n]ot every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal." (*In re K.C.* (2011) 52 Cal.4th 231, 236.) Mother contends she is aggrieved by the court's March 24, 2015 orders because if the court had exercised its authority to consider maternal grandmother for placement as an alternative to the prospective adoptive parents, it would have then likely found legal guardianship with maternal grandmother to be the appropriate permanent plan, and mother's parental rights need not have been terminated.

The Supreme Court in *In re K.C.* concluded that a "parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement *only if the placement order's reversal advances the parent's argument against terminating parental rights*." (*In re K.C.*, *supra*, 52 Cal.4th at p. 238, italics added.) The father in *In re K.C.* did not contend the order terminating his parental rights was infirm. He only argued that the court should have placed his son with the paternal grandparents. (*Id.* at p. 235.) The Supreme Court concluded the father lacked standing to appeal because he had not raised any argument against the termination of his parental rights. Because the father "did not contest the termination of his parental rights in the juvenile court" and "acquiesc[ed] in the termination of his rights, he relinquished

4

the only interest in [his son] that could render him aggrieved by the juvenile court's order declining to place the child with grandparents." (*Id*. at p. 238.)

Mother made no argument in the juvenile court that it would be improper to terminate her parental rights. But on appeal, she contends that if the juvenile court had reconsidered maternal grandmother for placement again, before J.H. was placed in the custody of a nonfamily caregiver, the court would have likely decided at the section 366.26 hearing that legal guardianship was the best option for J.H., not adoption, and therefore would not have terminated parental rights. Nothing in the record supports mother's argument. Maternal grandmother had not been approved because of the criminal record of her husband, legal guardianship was never under consideration, and an approved prospective adoptive home had been located in which J.H. was doing well.

Thus, even if mother has standing to appeal the placement decision, she has not demonstrated reversible error because the only argument she raises on appeal is based on speculation with no evidentiary support.

## DISPOSITION

The juvenile court's orders of March 24, 2015 denying mother's petition pursuant to Welfare and Institutions Code section 388 and terminating parental rights are affirmed.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

5